# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
### CIVIL CASE NO.: 5:14-CV-00166-RLV-DSC

| | | |
|---|---|---|
| GARY D. PICKENS AND<br>PATRICIA ANN PICKENS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JP MORGAN CHASE BANK, N.A.;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>AND FEDERAL NATIONAL<br>MORTGAGE ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendants JP Morgan Chase Bank, N.A., Federal National Mortgage Association, and Mortgage Electronic Registration Systems, Inc.'s Motions to Dismiss. [Doc. No. 6]; [Doc. No. 8]. Also before the Court is Plaintiffs' Motion for a Preliminary Injunction. [Doc. No. 22]. Having been fully briefed and considered, the parties' motions are now ripe for disposition. For the reasons discussed more fully below, Defendants' Motions to Dismiss (Doc. Nos. 6 & 8) are hereby **GRANTED** and Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 22) is hereby **DENIED**.

## I.     BACKGROUND[1]

This case concerns foreclosure proceedings regarding the Plaintiffs' residence located at 221 Old Mountain Village Drive, Hiddenite, North Carolina, 28636 (the "Property"). At first

---

[1]  Though not raised by the parties, the Court appears to have subject matter jurisdiction over this case. Original jurisdiction is conferred pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims against Defendant JP Morgan that arise under federal law. *See* [Doc. No. 1] at pp. 12-14. Consequently, this Court has, at the very least, supplemental jurisdiction over the Complaint's remaining claims. *See* 28 U.S.C. § 1367. In addition, the Complaint appears to allege diversity jurisdiction, and the Defendants have not challenged these allegations. *See* [Doc. No. 1] at pp. 1-2 (¶¶ 1-2); *see also* 12 U.S.C. § 1717(a)(2)(B); 28 U.S.C. § 1332.

glance, the parties' copious amount of filings, as well as the Complaint's numerous allegations, make this matter appear rather complex. However, once one strips away all irrelevant and conclusory matters, as this Court is obliged to do, it becomes clear that the material allegations and legal issues presented by the parties' various submissions are relatively straightforward.

On June 19, 2001, the Plaintiffs executed, as borrowers, a promissory note (the "Note") and Deed of Trust concerning a debt secured by the Property and issued by lender Provident Funding Associates, LP (hereinafter, "Provident"). *See* [Doc. No. 7-1] at p. 14; [Doc. No. 20-1] at p. 2.[2] Defendant Mortgage Electronic Registration Systems, Inc., (hereinafter, "MERS") is identified in the Deed of Trust as "a separate corporation that is acting solely as a nominee for [Provident] and [Provident's] successors and assigns." [Doc. No. 7-1] at p. 2. In accordance with its obligation as "sole[] . . . nominee" for Provident, "MERS is [identified as] the beneficiary" under the Deed of Trust. *Id.* First American Title Insurance Company (hereinafter, "First American") is identified in the Deed of Trust as the "trustee." [Doc. No. 7-1] at p. 2. On June 20, 2001, the Deed of Trust was recorded in the official records of Alexander County, North Carolina. *See* [Doc. No. 7-1] at p. 2. On May 18, 2012, MERS assigned the Deed of Trust, "with all interest secured thereby, all liens, and any rights due or to become due thereon," to JP Morgan Chase Bank, National Association (the "First Assignment"). [Doc. No. 1-7] at p. 2. The First Assignment was executed by MERS, as the nominee for Provident Funding. *Id.* The First Assignment was recorded in the records of Alexander County, North Carolina on June 4, 2012. *Id.*

---

[2] The Court is permitted to consider documents that are either incorporated into the complaint; central to the Plaintiffs' claims; sufficiently referred to in the complaint, so long as the authenticity of the documents is not disputed; or attached to a motion to dismiss, if the documents are integral to and relied on in the complaint. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008); *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396 (4th Cir. 2006). In addition, the Court may take judicial notice of matters of public record in considering a motion to dismiss. *See, e.g.*, *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Each of the documents considered by the Court and contained in the record, particularly the assignments, the Deed of Trust, the Note, and the order of foreclosure, fall into one of these acceptable categories. Therefore, the Court may consider them at this stage of the litigation.

Sometime prior to August 29, 2014, the Plaintiffs defaulted on their obligations under the Note. *See* [Doc. No. 20-4] at p. 1 (filed order of the North Carolina General Court of Justice, Superior Court of Alexander County, stating that a default had occurred). On August 29, 2014, JP Morgan obtained an "Order Permitting Foreclosure" (the "Foreclosure Order") based upon the Plaintiff's default and other evidence presented to the state court, and the Foreclosure Order directs that foreclosure may be had on the Property. *Id.* On September 27, 2014, JP Morgan Chase Bank, National Association, representing itself as the "holder of [the] Deed of Trust," assigned "all beneficial interest" under the Deed of Trust to Federal National Mortgage Association ("Fannie Mae") and its "successors and assigns" (the "Second Assignment"). *See* [Doc. No. 22-2] at pp. 2-3. The Second Assignment was recorded in the records of Alexander County, North Carolina on December 9, 2014. [Doc. No. 22-2] at p. 2.

On October 15, 2014, Plaintiffs commenced litigation in this Court against Defendants JP Morgan Chase Bank, N.A., MERS, and Fannie Mae. [Doc. No. 1]. In the Complaint, Plaintiffs assert claims against Defendant JP Morgan alleging violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Credit Reporting Act ("FCRA"). Plaintiffs assert additional claims of intentional misrepresentation, unjust enrichment, civil conspiracy, and wrongful foreclosure against all Defendants in connection with the underlying foreclosure proceeding commenced in state court. As the primary basis for their action, the Plaintiffs contend that the assignment − the First Assignment − is void because it was executed by MERS. *See*, *e.g.*, [Doc. No. 1] at p. 7 (¶ 24). Based upon this allegation, the Plaintiffs seek to cancel the Note and Deed of Trust, and to quiet title in their name. *See*, *e.g.*, [Doc. No. 1] at pp. 6-7, 18-20 (¶¶ 23, 97-110). Thus, Plaintiffs' contend that all assignments of the Note and Deed of Trust are void, and that none of the Defendants presently have the authority to foreclose

on the Property. *Id.*

In addition to the above, the Complaint generally protests "the scheme of selling mortgage loans as securities" (i.e., "securitization") and the "scheme's" attendant consequences. *See*, *e.g.*, [Doc. No. 1] at pp. 3, 7 (¶¶ 6, 8, 25). More specifically, Plaintiffs complain about the "obfuscation of the public property records" that hinders the ability of the general public from discovering the identity of the true beneficiary/lienholder. *See*, *e.g.*, [Doc. No. 1] at p. 5 (¶ 19). According to Plaintiffs, this scheme has enabled Defendant MERS (and its members) to benefit financially from not having to reflect changes in ownership in county records, thereby depriving counties of transfer tax revenues worth millions of dollars in violation of state law. *See*, *e.g.*, [Doc. No. 1] at p. 5 (¶ 20).

In terms of relief sought, the Plaintiffs seek (1) monetary damages; (2) "an order cancelling all mortgage and foreclosure-related instruments;" (3) "declaratory relief as to what (if any) party, entity or individual or group thereof is/was the owner of the Promissory Note executed at the time of the loan closing and whether the Mortgage secures any obligation of the Plaintiffs;" and (4) "a Permanent Injunction prohibiting further foreclosure and/or eviction actions by the Defendants;" or (5) "in the alternative, a Final Judgment granting Plaintiffs Quiet Title in and to the subject property." [Doc. No. 1] at p. 3 (¶ 9). *In Plaintiffs' own words*, "Plaintiffs seek to retain possession of their home and prove that there is fraud and/or illegality in the subject mortgage loan and associated foreclosure proceeding by the Defendants herein." [Doc. No. 1] at p. 5 (¶ 15).

## II.    DISCUSSION

### A.    Defendants' Motions to Dismiss

#### *1.    Standard of Review*

When reviewing a Rule 12(b)(6) motion to dismiss, this Court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses

against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-plead factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed. App'x 820, 827 (4th Cir. 2010); *see also Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

In applying this standard, the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted); *Dolgaleva*, 364 Fed. App'x at 827. However, the Fourth Circuit has "not read *Erickson* to undermine *Twombly's* requirement that a pleading contain more than labels and conclusions[.]" *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing *pro se* complaint); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Erickson*, 551 U.S. at 94; *Iqbal*, 556 U.S. at 679)); *accord Silvers v. Iredell Cty. Dep't of Soc. Servs.*, 2016 WL 427953, at *7 (W.D.N.C. Feb. 3, 2016) (Voorhees, J.). The rules governing the generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Ashby v. City of Charlotte*, 2015 U.S. Dist. LEXIS 103286, at *4 (W.D.N.C. 2015); *Godfrey v. Long*, 2012 U.S. Dist. LEXIS 2671, at *3-4 (E.D.N.C. 2012) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)); *see also Silvers*, 2016 WL 427953, at *7.

2.       *State Law Claims Against All Defendants*

     i.       PLAINTIFFS' CLAIMS FOR WRONGFUL FORECLOSURE, CANCELLATION OF INSTRUMENTS, QUIET TITLE, AND INTENTIONAL MISREPRESENTATION / CIVIL CONSPIRACY RELATED TO THE PROCUREMENT OF THE FORECLOSURE ORDER ARE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION

Inherent in our country's foundational documents is the idea that the federal government is one of limited powers. *See*, *e.g.*, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, ___ U.S. ___, 132 S. Ct. 2566, 2578 (2012); *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) ("The Constitution created a Federal Government of limited powers."); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 895 (4th Cir. 1999) ("The federal government is one of limited powers not because it chooses to be, but because the Constitution makes that choice for it."). That idea plays out not only with respect to the relations between the branches of government, but also with respect to the relations between the federal government and the states. *See*, *e.g.*, *New York v. United States*, 505 U.S. 144, 181 (1992) ("State sovereignty is not just an end in itself: Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power." (internal quotation marks omitted)). Indeed it is also embodied in the Constitution's limited grant to the federal courts of the power to hear cases. *See* U.S. Const., Art. III; *see also Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) ("Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction.").

It is for this reason that, when presented with a dispute that has been touched upon in the state courts, a federal court must be ever mindful of the basis for its subject-matter jurisdiction. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Because federal courts are courts of limited jurisdiction, they may only hear and decide cases when given the authority to do so by the United States Constitution and federal statutes. *See In re Bulldog*

*Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998); *accord Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree.").

Where the Court has subject-matter jurisdiction, it may hear the merits of a claim; where it lacks jurisdiction, the Court has no authority to hear the case. Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Congress has authorized federal courts to exercise subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal district courts, however, may not exercise appellate jurisdiction over the decisions of the state courts; only the Supreme Court may exercise such authority. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Additionally, federal district courts have no jurisdiction to hear "challenges to state court decisions in particular cases arising out of judicial proceedings." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983). These tenets of federal jurisdiction are known as the *Rooker-Feldman* doctrine, and the doctrine "reinforces the principle . . . of federalism" by acting as a complete bar to a federal court's authority to hear certain claims. *See Edmonds v. Clarkson*, 996 F. Supp. 541, 546 (E.D. Va. 1998), *aff'd by* 165 F.3d 910 (4th Cir. 1998); *see also Alder v. James*, 238 F.3d 410, 2000 WL 1825422, at *2 (4th Cir. 2000) ("The *Rooker-Feldman* doctrine is rooted in principles of comity and federalism.").

Critically, the *Rooker-Feldman* doctrine applies not only to issues actually presented to and decided by a state court, but also to issues that are "inextricably intertwined" with questions decided by a state court, regardless of whether those issues or claims were *actually raised* before the state court. A federal claim is "inextricably intertwined" with a state court decision where, "in

order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997). As such, this Court, and others, have held that *Rooker-Feldman* prohibits a plaintiff from asserting federal claims attacking a state court foreclosure action. *See*, *e.g.*, *Dillard v. Bank of N.Y.*, 476 F. App'x 690 (10th Cir. 2012); *Naylor v. Wells Fargo Home Mortg., Inc.*, 2016 U.S. Dist. LEXIS 1003 (W.D.N.C. Jan. 5, 2016); *Steele v. Capital One Home Loans, LLC*, 2014 U.S. Dist. LEXIS 104142 (W.D.N.C. July 30, 2014), *aff'd by* 594 F. App'x 215 (4th Cir. 2015); *Radisi v. HSBC Bank USA, N.A.*, 2012 U.S. Dist. LEXIS 81605 (W.D.N.C. June 13, 2012), *aff'd by* 479 F. App'x 468 (4th Cir. 2012).

In their Complaint, Plaintiffs ask this Court to cancel any foreclosure action pending against the Property, to quiet title to the Property in their name, and to award them relief based upon the purportedly fraudulent nature of certain documents that led to the foreclosure proceeding. *See* [Doc. No. 1] at pp. 17-20 (¶¶ 89-110). In both their Complaint and briefs, the Plaintiffs fervidly argue that MERS could not appropriately assign interests in the Deed of Trust, and that no Defendant has sufficient interest in either the security documents or the Property so as to maintain standing to foreclose upon the Property. However, the state courts of North Carolina have already held against the Plaintiffs on these very issues. Pursuant to North Carolina law, a state court can only authorize a foreclosure if it finds that the party seeking to foreclose on a specific property is the lawful holder of a valid debt. *See* N.C. Gen. Stat. § 45-21.16(d). That statute goes on to provide that "[t]he act of the clerk in so finding or refusing to so find is a judicial act . . . ." N.C. Gen. Stat. § 45-21.16(d1). In this case, it is public record that, on August 29, 2014, the clerk of the Superior Court of Alexander County found that JP Morgan Chase Bank, National Association was the

lawful holder of the debt evidenced by the Note and secured by the Deed of Trust.[3] *See* [Doc. No. 20-4] at p. 1. As a result, JP Morgan Chase Bank, National Association's status as the lawful holder of the Note was judicially established by the state court's August 29, 2014 foreclosure order. *Id.* If this Court were to rule in Plaintiffs' favor on their claims, such a decree would effectively "determine that the [state] court [foreclosure] judgment was erroneously entered" and "render the judgment ineffectual." *Jordahl*, 122 F.3d at 202. *Rooker-Feldman* and federalism concerns obviously prohibit this Court from taking such action.

In addition to their wrongful foreclosure,[4] cancellation, and quiet title claims, Plaintiffs' also allege that the Defendants committed intentional fraud against them through a civil conspiracy. *See* [Doc. No. 1] at pp. 14-16 (¶¶ 69-88). Any fraud or civil conspiracy alleged to have

---

[3] Plaintiffs have submitted additional public records to indicate that, following the Foreclosure Order, JP Morgan Chase Bank, National Association transferred its interest in the Deed of Trust to Fannie Mae on September 27, 2014, and that the debt-servicing obligation transferred to a "Seterus, Inc." *See* [Doc. No. 22-2] at pp. 2-3. Plaintiffs have presented no compelling argument that either MERS or JP Morgan were without authority to transfer their interests in the security documents. In North Carolina, the assignment of a deed of trust is effective and proper under the law. Specifically, N.C. Gen. Stat. § 47-17.2 states, in relevant part, as follows:

> It shall not be necessary in order to effect a valid assignment of a note and deed of trust, [or] mortgage . . . to record a written assignment in the office of the register of deeds in the county in which the real property is located. A transfer of the promissory note or other instrument secured by the deed of trust, mortgage, or other security interest that constitutes an effective assignment under the law of this State shall be an effective assignment of the deed of trust, mortgage, or other security instrument. The assignee of the note shall have the right to enforce all obligations contained in the promissory note or other agreement, and all the rights of the assignor in the deed of trust, mortgage, or other security instrument, including the right to substitute the trustee named in any deed of trust, and to exercise any power of sale contained in the instrument without restriction.

N.C. Gen. Stat. § 47-17.2; *see also Steele v. Capital One Home Loans*, LLC, 2014 WL 3748928, * 3 (W.D.N.C. 2014); *accord Orban v. Nationwide Tr. Servs.*, 2014 U.S. Dist. LEXIS 162762, at *12-15 (W.D.N.C. 2014) (Voorhees, J.). Here, based on the filings by Plaintiff, JP Morgan, MERS, and Fannie Mae, it is clear that the assignments of the Deed *were* recorded with county authorities (though recording was not required). Therefore, the assignments are now part of the public record and may be considered by the Court. *See, e.g.*, [Doc. No. 22-2].

[4] For purposes of clarity, the Court notes that Plaintiffs' Complaint is not asserting a typical "wrongful foreclosure" claim under North Carolina law. *See, e.g.*, *Patterson v. DAC Corp. of North Carolina*, 66 N.C. App. 110, 310 S.E.2d 783, 785-86 (N.C. Ct. App. 1984); *Parker v. Sheldon*, 47 N.C. App. 493, 267 S.E.2d 403,403-404 (N.C. Ct. App. 1980). A wrongful foreclosure claim is typically based upon the alleged fraudulent transfer of foreclosed property to a third party during a foreclosure sale. *See Patterson*, 310 S.E.2d at 785. Here, rather, Plaintiffs' claim is that fraud was committed by Defendants in the process of securing the *Foreclosure Order*. This claim does not involve an alleged foreclosure *sale* to a third party, and it is clear from the record that such a sale had not occurred at the time the Complaint was filed. The Court notes, however, that public records show that a foreclosure sale did occur on December 11, 2014, months after the Complaint in the instant action was filed. *See* [Doc. No. 22-3].

been associated with the procurement of the Foreclosure Order, however, does not change the *Rooker-Feldman* analysis. In this regard, Plaintiffs' fraud and civil conspiracy claims touch upon the manner by which interests in the security documents and the Property were transferred and recorded. *See*, *e.g.*, [Doc. No. 1] at p. 11 (¶ 49) ("MERS has usurped state law by recording false interests in property, which false interests constitute fraudulent liens. MERS can neither acquire nor transfer an interest in a mortgage loan through fraud or illegality."). This is an "intrinsic fraud" properly addressed on appeal within the state court system. *See Green v. Ancora-Citronelle*, 577 F.2d 1380, 1384 (9th Cir. 1978) (extrinsic fraud "prevents a party from having an opportunity to present his claim or defense in court;" intrinsic fraud "goes to the very heart of the issues contested in the state court action"); *accord Naylor*, 2016 U.S. Dist. LEXIS 1003, at *11-12 (discussing difference between extrinsic and intrinsic fraud in *Rooker-Feldman* context concerning a foreclosure-based action); *see also Matter of Foreclosure of Deed of Trust by Goforth Properties, Inc.*, 334 N.C. 369, 432 S.E.2d 855, 859 (N.C. 1993) (stating that legal defenses to a foreclosure action are properly raised on appeal from a order of foreclosure). As North Carolina statutes provide, an order of foreclosure may properly be appealed in the state court system. *See* N.C. Gen. Stat. § 45-21.16(d1). Because the state court's order could have been appealed in the state system on grounds of fraud or misrepresentation (to the extent fraud or misrepresentation is alleged to have resulted in the procurement of the Foreclosure Order), jurisdiction over such a claim is not properly found in the federal court system.

Accordingly, the above-discussed claims are hereby **DISMISSED** for lack of subject-matter jurisdiction.

ii.	PLAINTIFFS' REMAINING STATE LAW CLAIMS FOR INTENTIONAL MISREPRESENTATION, UNJUST ENRICHMENT, AND CIVIL CONSPIRACY MUST SIMILARLY BE DISMISSED

a.	*Intentional Misrepresentation/Fraud and Civil Conspiracy Claims*

Even assuming the Court has subject-matter jurisdiction to consider Plaintiffs' misrepresentation/fraud and civil conspiracy claims, these claims must fail on the merits. It is clear from the Plaintiffs' filings that their fraud and conspiracy claims are based upon what they consider to be the fraudulent manner by which the Note and Deed of Trust were transferred amongst various entities over the course of the last decade. Specifically, Plaintiffs' claims center upon MERS' role in the assignment process. However, the Plaintiffs' position misunderstands MERS' role and ignores their agreement to MERS' involvement in their mortgage transaction.

MERS is a company which maintains an electronic registry that stores information as to who originates, services and owns mortgage loans. *See*, *e.g.*, *Ward v. Security Atlantic Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 567 (E.D.N.C. 2012). MERS' nominee status in the Deed of Trust allows the transfer of the *servicing rights* of the Note among MERS members without the need to publically record the assignments of the Note. *Id.* While a MERS member retains servicing rights over the Note, MERS remains the beneficiary of record on the Deed of Trust, and continues to act as a nominee for the beneficial owner. *Id.* "Once beneficial ownership of the note is transferred to a non-MERS member, MERS will assign the [deed of trust] and the assignment will be recorded with the registry of deeds." *Rosa v. Mortgage Elec. Registration Sys., Inc.*, 2011 U.S. Dist. LEXIS 110151, at *11 (D. Mass. Sept. 9, 2011) (alteration added & citation omitted); *accord Ward*, 858 F. Supp. 2d at 567-68 n.5.

Here, MERS was named in the Deed of Trust as nominee and beneficiary on behalf of

Provident. *See* [Doc. No. 7-1] at p. 2; *accord* Nominee, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining nominee as "[a] person designated to act in place of another, usu[ally] in a very limited way" or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others"). Plaintiffs expressly agreed to this designation. *See* [Doc. No. 7-1] at pp. 2-15. As nominee and beneficiary of the Deed, MERS could "transfer . . . servicing rights of the [N]ote among MERS members without the need to publicly record such assignments[.]" *Ward*, 858 F. Supp. at 567-68 n.5. MERS remained nominee and beneficiary of the lender, Provident, until the Deed of Trust was assigned to JP Morgan Chase Bank, National Association. *See* [Doc. No. 1-7] at p. 2. The First Assignment was recorded in the county records. *Id.* JP Morgan remained the holder of the Note and the owner of the Deed of Trust until after the Foreclosure Order was obtained. *See* [Doc. No. 20-4]. Thereafter, JP Morgan Chase Bank, National Association's interests were assigned to Fannie Mae. [Doc. No. 22-2].

Plaintiff has failed to point to, and this Court has failed to uncover, any case finding that these arrangements violate North Carolina law. Indeed, it appears to the Court that these arrangements *actually satisfy* North Carolina law. *See* N.C. Gen. Stat. § 47-17.2; note 3, *supra*. In addition, several other courts have held that this arrangement is lawful and that MERS has the authority to assign its rights under deeds of trust. *See*, *e.g.*, *Porterfield v. JPMorgan Chase Bank, Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 152318, at *10 (E.D.N.C. 2013) (citing numerous cases); *see also Jackson v. MERSCORP, Inc.*, 2015 U.S. Dist. LEXIS 132019, at *11 (E.D.N.C. 2015). The Court finds that the Plaintiffs' allegations of fraud and civil conspiracy based upon "invalid, unauthorized, or otherwise defective" assignments of the Note and Deed of Trust "are not sufficient to establish the false statement element" of an intentional misrepresentation/fraud claim or the "unlawful conduct" necessary for a claim of civil conspiracy. *See Jackson*, 2015 U.S. Dist.

LEXIS 132019, at *11; *see also Eli Research, Inc. v. United Comm. Group, LLC*, 312 F.Supp.2d 748, 763 (M.D.N.C. 2004) (discussing elements of civil conspiracy claim under North Carolina law); *Whisnant v. Carolina Farm Credit, ACA*, 204 N.C. App. 84, 94, 693 S.E.2d 149, 156-57 (N.C. Ct. App. 2010) (discussing elements of a fraud claim under North Carolina law).

Accordingly, Plaintiffs' intentional misrepresentation/fraud and civil conspiracy claims are hereby **DISMISSED**.[5]

b.    *Unjust Enrichment Claim*

Plaintiffs have also alleged a state law claim for unjust enrichment against each of the Defendants. Under North Carolina law, "in order to prevail on a claim of unjust enrichment, a plaintiff must show that 'property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received.'" *See Butler v. Butler*, ___ N.C. App. ___, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015) (quoting *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 537 S.E.2d 248, 266 (N.C. Ct. App. 2000)). However, where an express contract exists, courts will not imply or impose an equitable quasi-contract between the parties for the purpose of affording the equitable remedy of unjust enrichment. *See, e.g., Pritchett & Burch, PLLC v. Boyd*, 169 N.C. App. 118, 609

---

[5] To the extent Plaintiffs' intentional misrepresentation/fraud claims or civil conspiracy claims allege wrongful actions during the application or consummation of the mortgage loan, such claims are also dismissed. Plaintiffs' allegations amount to no more than conclusory allegations that contain no specificity or underlying facts that lead this Court to infer any wrongful conduct on the part of these Defendants. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Indeed, the consummation of the Note and Deed originally involved an entity that is not even a party to this action, i.e., Provident. Plaintiffs have alleged no facts to suggest that JP Morgan or Fannie Mae played any role in the original application and consummation of the secured loan transaction and related documents. To be clear, any other allegations are of such vagueness that this Court has been unable to discern viable claims from the Complaint. As such, those allegations are insufficient to comply with the heightened pleading standards of Rule 9 and cannot support the asserted claims. *See Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004) ("Courts [are] quick to reject pleadings in which multiple defendants are lumped together and in which no defendant can determine . . . which of the alleged representations it is specifically charged with having made."); *see also Madison River Mgmt. Co. v. Business Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005) (stating that Rule 9(b) applies to "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud").

S.E.2d 439, 443 (N.C. Ct. App. 2005). A note and deed of trust constitute express contracts under North Carolina law. *See*, *e.g.*, *Matter of Foreclosure of Deed of Trust by Goforth Properties, Inc.*, 334 N.C. 369, 376, 432 S.E.2d 855, 859 (1993).

Here, Plaintiffs claim that the Defendants have all been unjustly enriched because of fees charged in relation to the loan transaction and because "monies" paid toward the balance of the Note were allegedly "improperly, illegally, [or] fraudulently" misapplied. *See* [Doc. No. 1] at p. 15 (¶¶ 77-78). However, these allegations stem from the contractual relationship between the Plaintiffs and Defendants JP Morgan and Fannie Mae,[6] as successors and assignees of the Note, and are governed by the Note itself. Because the Note is an express contract between such parties, no claim for unjust enrichment can lie. *See*, *e.g.*, *Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 438 (E.D.N.C. 2012).

In addition, Plaintiffs appear to claim that the Defendants have been unjustly enriched through their allegedly illegal scheme of assignments of the Note and Deed, and the alleged "securitization" of the security documents. *See* [Doc. No. 1] at pp. 15-16 (¶¶ 79-81). Plaintiffs allege that unjust enrichment has occurred as a result of the alleged illegality of the assignments of the Note and Deed of Trust. The Court finds that these allegations lack merit because, as has already been discussed, the assignment sequence was not conducted in violation of North Carolina law. To the extent Plaintiffs' contend unjust enrichment has occurred as a result of the alleged "securitization" of their mortgage, Plaintiffs' allegations are conclusory and lack the specificity necessary to state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Specifically, Plaintiffs have failed to specify exactly how the "securitization" process has supposedly unjustly enriched any Defendant at the expense of Plaintiffs. Plaintiffs make general allegations that the

---

[6] The Court notes that MERS is not a party to the Note. Rather, MERS' rights stem primarily from the Deed of Trust. *See* [Doc. No. 7-1].

"securitization" process violates the law and allows the Defendants to escape large tax liabilities; however, again, the Court has already found that the assignment process, led initially by MERS, does not violate North Carolina law. Hence, any benefit the Defendants received[7] by being able to assign their rights under either the Note or the Deed of Trust were obtained in accordance with law. Additionally, it is unclear exactly what "benefit" Plaintiffs are alleging transferred from them to the Defendants, and therefore "unjustly enriched" the Defendants. Further, Plaintiffs have failed to allege any specific facts reasonably implying that any Defendant owed them "a legal or equitable obligation . . . to account for [any] benefits [allegedly] received" by them. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 537 S.E.2d 248, 266 (N.C. Ct. App. 2000).

In sum, Plaintiffs have failed to make specific allegations which give rise to the reasonable inference that the Defendants have been unjustly enriched by the transactions at issue here. Accordingly, Plaintiffs' unjust enrichment claim is hereby **DISMISSED**.

### 3. *Federal Law Claims Against J.P. Morgan Chase Bank, N.A.*

#### i. RESPA CLAIM

Plaintiffs also allege that JP Morgan violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. In particular, Plaintiffs allege that JP Morgan violated 15 U.S.C. § 2607 by improperly "accept[ing] charges for the rendering of real estate services which were, in fact, charges other than for services actually performed" "in connection with the mortgage loan to Plaintiffs[.]" [Doc. No. 1] at p. 12 (¶¶ 52-55). These allegations constitute the total factual underpinning for the Plaintiffs' RESPA claim. The Court has reviewed the Complaint in its entirety and is unable to discern or infer to what Plaintiffs refer when they allege that JP Morgan has

---

[7]  To be clear, the benefit received could simply be that of convenience.

"accepted charges . . . which were . . . charges other than for services actually performed . . . ." [Doc. No. 1] at p. 12 (¶ 54). Nevertheless, even if the Court were to credit Plaintiffs' conclusory allegation as being sufficient to state a claim, the RESPA claim still fails as a matter of law.

RESPA prohibits receipt of unearned fees and commissions incident to "settlement service[s]." 12 U.S.C. § 2607. "Settlement service[s]" are defined as "any service[s] provided in connection with a prospective or actual settlement . . . ." *See* 12 C.F.R. § 1024.2 (defining "settlement service"). "Settlement" is defined as "the process of executing legally binding documents regarding a lien on property . . . . This process may also be called 'closing' or 'escrow' in different jurisdictions." *Id.* (defining "settlement").

Here, Plaintiffs seek to hold JP Morgan liable under Section 2607 of RESPA for "services" it provided after it became servicer for the Note. However, the record clearly shows that JP Morgan was not involved in the original closing on the Plaintiffs' mortgage. Thus, Plaintiffs have failed to allege that JP Morgan provided any "settlement service" at the time of "closing" that subjects it to liability under Section 2607. Further, even if JP Morgan *was* a party to the closing, it is clear that the relevant limitations period of one (1) year has already passed on Plaintiffs' Section 2607 claim.[8] *See* 12 U.S.C. § 2614. Plaintiffs "closed" on their mortgage in 2001. *See* [Doc. No. 7-1] at p. 14; [Doc. No. 20-1] at p. 2. This action was not brought until October 2014. [Doc. No. 1]. Accordingly, Plaintiffs' RESPA Section 2607 claim against Defendant JP Morgan is hereby **DISMISSED**.

---

[8] JP Morgan raised the affirmative defense of statute of limitations in its brief in support of its Motion. [Doc. No. 9] at p. 7.

ii.     TILA C<span style="font-variant:small-caps">laim</span>

Plaintiff also alleges that JP Morgan violated the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.*, by failing to disclose certain charges "incident to the extension of credit to Plaintiffs," and by "never disclos[ing] the true nature" of the loan transaction. *See* [Doc. No. 1] at pp. 12-13 (¶¶ 57-60). For relief, Plaintiffs seek to "rescind the loan transaction" and request the Court to "construe[]" their TILA claim as seeking rescission. *See* [Doc. No. 1] at p. 13 (¶ 60). Despite the fact that, as is already discussed, Plaintiffs have failed to allege any facts showing that JP Morgan was a party to the original loan transaction, Plaintiffs' claim must fail because their requested relief is barred by statute.

Plaintiffs' loan transaction, as a residential mortgage loan, constituted a closed-end consumer credit transaction.[9] *See* 12 C.F.R. §§ 226.2(a)(10), 226.2(a)(20); *see also* [Doc. No. 20-1] at pp. 1-2 (demonstrating that the Note is not an open-ended credit line). "If the violation is . . . in a closed-end credit transaction, the date of the occurrence of [a TILA] violation is no later than the date the plaintiff enters the loan agreement." *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006) (quotation and citation omitted); *see also White v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 106211, at *17-18 (D. Md. 2013) ("For mortgages, the . . . [TILA] limitations period begins to run no later than the date the plaintiff enters the [mortgage] loan

---

[9] Section 226.2(a)(10) defines "closed-end credit" as "consumer credit other than 'open-end credit' as defined in this section." 12 C.F.R. § 226.2(a)(10). Section 226.2(a)(20) provides:

"Open-end credit" means consumer credit extended by a creditor under a plan in which:
  (i)    The creditor reasonably contemplated repeated transactions;
  (ii)   The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and
  (iii)  The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

*See* 12 C.F.R. § 226.2(a)(20).

agreement." (quotation and citation omitted)). Accordingly, a mortgage borrower's right to rescind under TILA expires "three years after the date of consummation of the [mortgage] transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). This three-year limit is an absolute time limit that is not tolled for any reason. *See Jones v. Saxon Mortgage, Inc.*, 537 F.3d 320, 327 (4th Cir. 1998) (holding that a rescission claim was barred by TILA's three-year statute of repose). Further, any other civil cause of action, seeking relief other than rescission, is barred by a one-year statute of limitations. *See* 15 U.S.C. § 1640(e); *accord* 15 U.S.C. § 1635(g).

As is discussed above, Plaintiffs clearly "closed" on the mortgage transaction in 2001. *See* [Doc. No. 7-1] at p. 14; [Doc. No. 20-1] at p. 2. This action was not brought until October 2014. [Doc. No. 1]. Accordingly, like Plaintiffs' RESPA Section 2607 claim, Plaintiffs' TILA claim against Defendant JP Morgan is hereby **DISMISSED**.

### iii.    FCRA CLAIM

Finally, Plaintiffs contend that JP Morgan has violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, by "wrongfully, improperly, and illegally report[ing] negative information" to the credit reporting bureaus (i.e., the consumer reporting agencies, or "CRAs") regarding Plaintiffs' credit worthiness. *See* [Doc. No. 1] at p. 14 (¶ 63); *see also* 15 U.S.C. § 1681a(f). Plaintiffs seek to maintain a civil cause of action against JP Morgan for a violation of 15 U.S.C. § 1681s-2(b), which, under certain circumstances, imposes a "duty of investigation" on a "furnisher of information" to a CRA. *See* 15 U.S.C. § 1681s-2(b); *accord* 15 U.S.C. §§ 1681n, 1681o; *see also* [Doc. No. 1] at p. 14 (¶¶ 66-68). JP Morgan opposes the FCRA claim by challenging whether the Plaintiffs' allegations satisfy the *prima facie* elements of a claim under Section 1681s-2(b).

A consumer may only bring a private action against a furnisher for a purported violation of Section 1681s-2(b) "if [the] consumer disputes the accuracy of information that the furnisher

reports" to a CRA. *Saunders v. Branch Banking & Trust Co. of Virginia*, 526 F.3d 142, 148 (4th Cir. 2008). To state a *prima facie* claim under Section 1681s-2(b), a plaintiff must allege "(1) that plaintiff notified [a] CRA of disputed information, (2) that the CRA notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to reasonably investigate and modify the alleged inaccurate information." *McPhail v. Wells Fargo Dealer Servs.*, 2013 U.S. Dist. LEXIS 97053, at *13 (E.D.N.C. 2013), *adopted by* 2013 U.S. Dist. LEXIS 97050 (E.D.N.C. 2013) (citing *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004) and *Alston v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 33860, at *9 (D. Md. 2013)); *Nowlin v. Am. Home MTG SVC*, 2011 U.S. Dist. LEXIS 157475, at *7 (M.D.N.C. 2011), *adopted by* 2011 U.S. Dist. LEXIS 157474 (M.D.N.C. 2011).

Here, Defendant is correct in pointing out that the Plaintiffs' Complaint contains no allegations fulfilling any of these elements. *See* [Doc. No. 9] at pp. 9-10. This is fatal to the Plaintiffs' FCRA claim. *See McPhail*, 2013 U.S. Dist. LEXIS 97053, at *15-16; *Nowlin*, 2011 U.S. Dist. LEXIS 157475, at *7 (recommending dismissal of FCRA claim where plaintiff included "no allegation that [d]efendant . . . was ever notified by a consumer reporting agency that [p]laintiff dispute[d] information furnished by [defendant]") At most, Plaintiff is alleging a cause of action under Section 1681s-2(a), which – by its very terms – precludes a private cause of action. *See* 15 U.S.C. § 1681s-2(c) (stating that civil liability does not accrue for violations of section 1681s-2(a)); *Saunders*, 526 F.3d at 149; s*ee also Johnson*, 357 F.3d at 431-32. Accordingly, the Court **DISMISSES** the Plaintiffs' FCRA claim.

B.      Plaintiffs' Motion for a Preliminary Injunction

*1.      Standard of Review*

A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy and not granted to a party as a matter of right. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. To obtain a preliminary injunction, a plaintiff must establish (1) that he or she is likely to succeed on the merits; (2) that he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009).

*2.      Plaintiffs have not Satisfied the Elements of a Preliminary Injunction*

In *Winter*, the Supreme Court emphasized that, before a district court "may" grant injunctive relief, a plaintiff *must* "clearly" demonstrate a likelihood of success on the merits of the claim asserted. *See Winter*, 555 U.S. at 22. Because the Court has dismissed each of the Complaint's claims – either on subject-matter jurisdiction grounds, or for failing to state a claim upon which relief may be granted – the Plaintiffs are unable to overcome the burden weighing upon their request for injunctive relief. *See id.* Accordingly, the Plaintiffs' requested injunctive relief is hereby **DENIED**.

**III.  DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**

(1)    Defendants Federal National Mortgage Association and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss (Doc. No. 6) is hereby **GRANTED**;

(2)    Defendant JP Morgan Chase Bank, N.A.'s Motion to Dismiss (Doc. No. 8) is hereby **GRANTED**;

(3)    Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 22) is hereby **DENIED**; and

(4)    The Clerk is directed to enter judgment in favor of the Defendants, against the Plaintiffs, and to administratively terminate this case.

**SO ORDERED**.


Signed: May 12, 2016


Richard L. Voorhees
United States District Judge